UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Craig Robert Licari,

                    Petitioner,

   vs.

Lynn Dingle, Warden,

                    Respondent.          Civ. No. 06-1129 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, under Title 28 U.S.C. §2254, see Docket No. 1.  The Petitioner appears pro se, and the Respondent appears by Kimberly R. Parker, Assistant Minnesota Attorney General.  For reasons which follow, we recommend that the Petition be dismissed with prejudice.  See, Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts ("If it plainly appears from the petition and any attached exhibits that the petitioner

is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.").

## II. Factual and Procedural Background

The Petitioner is a State prisoner, who is currently serving a 330-month sentence at the Minnesota Correctional Facilities, in Stillwater, Minnesota.[1] The sentence resulted from the Petitioner's conviction, on October 11, 2000, in Isanti County District Court, of Second Degree Intentional Murder. After the selection of

---

[1]The following summary of facts is based primarily on the unpublished opinion of the Minnesota Court of Appeals in State v. Licari,("Licari I"), 2002 WL 4574 (Minn.App., January 2, 2002); the published opinion of the Minnesota Supreme Court in State v. Licari ("Licari II"), 659 N.W.2d 243 (Minn. 2003); the unpublished opinion of the Minnesota Court of Appeals in State v. Licari ("Licari III"), 2004 WL 2663408 (Minn.App., November 23, 2004), rev. denied (Minn., February 15, 2005), cert. denied, 544 U.S. 1054 (2005), and the "Statement of the Facts," which is set forth in the Petitioner's brief before the Minnesota Court of Appeals. See, Appellant's Brief and Appendix, pp. 5-8, in Exhibit 3 to Appendix to Respondent's Memorandum in Support of Motion to Dismiss Petition ("Appendix").

The Petitioner has not materially challenged the accuracy of these factual findings and, in any event, the Record before us contains no testimony, or other competent evidence, which would rebut, by clear and convincing evidence, the presumptive correctness of the State Court's factual findings. See, Title 28 U.S.C. §2254(e)(1); Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). We do not suggest that the Petitioner does not take exception to the factual findings of the State Courts, in one particular or another, for we merely note that his burden to demonstrate that those findings were clearly erroneous has not been sustained. Accordingly, we accept, as our factual Record, those facts which were set forth by the Minnesota Court of Appeals, and by the Minnesota Supreme Court, in Licari I, Licari II, and Licari III.

a Jury, and the testimony of eight (8) State witnesses, the Petitioner entered a Lothenbach[2] procedure, in which he waived his right to a Jury Trial, and agreed to submit his case to the Trial Court on stipulated evidence.  The Trial Court found the Petitioner guilty, determined that the Petitioner had treated the victim with "particular cruelty," and sentenced the Petitioner to a 330-month term of imprisonment.

The Petitioner appealed his conviction and sentence to the Minnesota Court of Appeals, and claimed that the Trial Court erred in denying his Motion to Suppress evidence.  See, State v. Licari, 2002 WL 4574 (Minn.App., January 2, 2002)("Licari I"), aff'd in part, reversed in part, State v. Licari, 659 N.W.2d 243 (Minn. 2003) ("Licari II"), appeal after remand, 2004 WL 2663408 (Minn.App., November 23, 2004), rev. denied (Minn., February 15, 2005)("Licari III"), cert. denied, Licari v. State, 544 U.S. 1054 (2005).  The contested evidentiary rulings included the Trial

---

[2]"The Lothenbach procedure calls 'for the defendant to enter a plea of not guilty, waive his right to a jury trial, and then stipulate to the prosecution's case,'" while preserving his right to appeal.  State v. Thompson, 720 N.W.2d 820, 826-27 (Minn.2006), quoting State v. Verschelde, 595 N.W.2d 192, 194-95 (Minn. 1999), discussing State v. Lothenbach, 296 N.W.2d 854, 857 (Minn. 1980).  Here, the Petitioner agreed that, if he were found guilty of Second-Degree Murder, then he would receive a sentence of 330 months -- an upward departure from the presumptive sentence of 306 months.  In turn, the State agreed that, if the Trial Court found the Petitioner guilty of Second-Degree Murder, then the State would dismiss a pending attempted-escape-from-custody charge.

Court's decision to admit evidence, that was secured through a warrantless search of the Petitioner's storage unit, despite the lack of authority in the landlord to permit the search, and the Trial Court's error in accepting the State's argument that the evidence was admissible because, once the State Agent opened the door of that unit, the evidence was in "plain view."

In addressing the Petitioner's arguments, the Court of Appeals summarized the facts, which supported his conviction, as follows:

> On Friday, April 23, 1999, [the Petitioner] Craig Robert Licari arranged to meet his estranged wife, Nancy Kay Licari (Nancy), at a café in Isanti, Minnesota. At the time, Nancy had been living with her mother for approximately ten months. When Nancy had not returned home by the following evening, her mother called the Isanti County Sheriff's Department to report her daughter missing. In investigating the missing persons' report, police performed a safety sweep of the Isanti area and issued a statewide Minnesota Crime Alert notification to bars, restaurants, and hotels, asking for help in finding [the Petitioner] and Nancy.
>
> On April 26, Nancy's family informed Investigator Cory Erikson of the Isanti County Sheriff's Department that both Nancy and [the Petitioner] kept belongings in a rented storage unit in a facility in Isanti County. The unit was rented in [the Petitioner's] name, but [the Petitioner] and Nancy both paid the rental fee and shared the key. Nancy's mother gave Erikson permission to look in the unit.

Erikson also learned from Nancy's family that [the Petitioner] and Nancy had been meeting in different hotels on weekends, and were in the process of trying to reconcile their marriage. Erikson knew from experience that a couple in the process of attempting to reconcile their marriage might pack up their belongings and leave the area. Therefore, Erikson believed at this point that he was looking for missing people; he was not conducting a criminal investigation.

On April 23, 1999, Erikson discussed the missing persons' investigation, including the storage unit, with Investigator Michael Ammend, also of the Isanti County Sheriff's Department. At Erikson's suggestion, Ammend contacted Karen Eaves, the storage facility manager, who verified that [the Petitioner] had a locker at the facility. The facility consists of a number of contiguous garage-size locked storage units, surrounded by an outer fence with a locked gate. Eaves used a pass key to open the outer gate for Ammend and accompanied Ammend to [the Petitioner's] storage unit. Eaves told Ammend that the rental agreement [the Petitioner] had signed authorized Eaves to enter the storage unit at will.

The agreement provided in pertinent part that

> [l]essor and its employees and agents shall have the right to enter the premises at all reasonable times for the purpose of inspection, cleaning, repairing, altering or improving the premises or the building; however, Lessor shall not hereby unreasonably interfere with Lessee's use of said premises.

Eaves used a key to open and remove the lock from the door of the storage unit. Ammend then opened the garage-like door by rolling it up until it was completely open. While still standing outside the unit, Ammend looked inside and saw what appeared to be a blue blanket or sleeping bag on the floor next to a pillow that had a reddish-brown substance on it. Ammend took three or four steps into the storage unit to look more closely, and saw the top of a human head with the same reddish-brown substance on it. Ammend believed that the substance was blood. He then sealed off the unit and obtained a warrant to search it. The search disclosed the victim's body, which was badly beaten.

[The Petitioner] was arrested the next day and charged with second-degree murder in violation of Minn. Stat. § 609.19, subd. 1(1)(1998). At the omnibus hearing, [the Petitioner] moved to suppress the victim's body found in the storage unit, arguing that the officer's warrantless search violated [the Petitioner's] rights under U.S. Const. amend. IV and Minn. Const. art. I, § 10. [The Petitioner] argued that he had a reasonable expectation of privacy in the leased storage unit, and that neither the consent, exigent circumstances, or inevitable discovery exceptions to the presumption against warrantless searches applied in this case. [The Petitioner] asked the trial court to exclude all evidence discovered as a result of the search of the storage unit as being tainted by the initial unconstitutional search.

The trial court denied [the Petitioner's] motion to suppress, reasoning that the provision in [the Petitioner's] rental agreement authorizing the facility manager to enter the unit to conduct "inspections" permitted the manager to unlock the unit door for police. The court concluded that, because

- 6 -

> the manager lawfully consented to Ammend's request to
> open the door, Ammend could legally seize anything that
> was in plain view once the door was open.

Licari I, supra at *1-2.

Based upon these facts, the Court of Appeals affirmed the Petitioner's conviction.

However, the Court rejected the State's argument that either the exigent circumstances

exception to the Warrant requirement, or the inevitable discovery doctrine, would

permit the otherwise unlawful search of the storage unit, but found that the State's

search was lawful because Ammend reasonably believed that Eaves had the authority

to consent to the search.  On January 25, 2002, the Petitioner filed a  Petition for

Review in the Minnesota Supreme Court, which was granted.

The Supreme Court affirmed in part, reversed in part, and remanded with

instructions.  See, Licari II, supra.  In reviewing the Record, the Court noted the

following evidence, which detailed the circumstances surrounding the Petitioner's

arrest:

> On Wednesday, April 28, investigators traveled to
> Minneapolis after learning that someone had been using
> Nancy's credit cards to buy jewelry and videocassette
> recorders at two Target stores in Minneapolis.  They met
> with security personnel at the stores and requested
> documentation of those transactions.  The Target personnel
> told police that a man had caused a problem at Target
> because he was trying to buy jewelry with a card that had

- 7 -

Nancy's name on it.  The investigators left behind a photo of appellant and asked Target staff to assist the police in locating him.

[Bureau of Criminal Apprehension (BCA) Special] Agent [Jon] Hermann testified that he then visited a nearby pawnshop and acquired records showing that [the Plaintiff] had pawned a videocassette recorder there.  Investigators also learned that a car matching the description of [Nancy's mother's] Ford Tempo had been seen parked on a street in south Minneapolis.

Finally, a manager from one of the Target stores they had visited contacted the investigators to announce that store security had apprehended and were detaining [the Petitioner].  The apprehension and detention was executed by an off-duty Minneapolis police officer who had seen the information on [the Petitioner] (including a photograph) left behind by the investigators.  The officer acknowledged that he had no other grounds to arrest [the Petitioner] because [he] was not committing any crime in Target; he testified that he made the arrest based on the "probable cause pick-up" request left by the BCA.  The officer searched [the Petitioner] and found he was carrying the keys to the Big Closet storage unit, as well as Nancy's credit cards.  The hat and clothing [the Petitioner] was wearing were stained with blood.

Id. at 247-48.

Contrary to the Minnesota Court of Appeals, however, the Supreme Court concluded

that the Petitioner had a reasonable expectation of privacy in his storage unit, that

Eaves, as the landlord, did not have either actual or apparent authority to authorize

- 8 -

Ammend's search of that storage unit, and that the State's search was not protected by the plain view doctrine. As a consequence, the Court remanded the matter to the Trial Court, with instructions to conduct a Hearing on the following two (2) issues: 1) whether the "relocation" provision in the rental agreement provided rights of "use" that gave Eaves the actual authority to consent to the search of the Petitioner's storage unit; and 2) whether, without the search of the storage unit on April 27, 1999, the investigators would have inevitably pursued, found, and searched the Petitioner, and uncovered the same evidence that was discovered on the Petitioner on April 28, 1999.

On remand, the Trial Court determined that the State had failed to meet its burden on the first issue, but concluded that the same evidence would have been secured by "inevitable discovery," denied the Petitioner's Suppression Motion, and affirmed his conviction for Second-Degree Murder, as well as the Petitioner's 330-month sentence. See, Licari III, supra at *1. The only issue, in the Petitioner's ensuing appeal of the Trial Court's decision to the Minnesota Court of Appeals, was whether the search of the Petitioner's storage unit was valid under the inevitable discovery doctrine. Consistent with the ruling of the Trial Court, the Court of Appeals held that an independent line of investigation had already begun, prior to the discovery of the body of the Petitioner's estranged wife, which ultimately, or inevitably, would

have led authorities to discover the body by lawful means. Id. at *3. Therefore, the Court denied the Petitioner's Motion to Suppress the evidence seized in the storage unit. Id.

On December 20, 2004, the Petitioner filed a Petition for Review, but the Minnesota Supreme Court denied further review on February 15, 2005, and thereafter, the United States Supreme Court declined to grant Certiorari. See, State v. Licari, 544 U.S. 1054, 1054 (2005).

On March 23, 2006, the Petitioner filed the Petition for Federal Habeas relief which is currently before us. In his Petition, the Petitioner raises the following four (4) grounds for Habeas relief: 1) that his conviction was obtained by use of evidence gained pursuant to an unlawful search and seizure; 2) that his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest; 3) that the State violated the terms of Petitioner's Lothenbach plea by instructing the Trial Court to add facts to the Record which were not agreed upon by the Petitioner; and 4) that the Minnesota Court of Appeals erred in affirming the Trial Court's ruling that the inevitable discovery exception to the exclusionary rule permitted the admission, at Trial, of the evidence which had been taken from the Petitioner's storage unit.

## III.  Discussion

A.    Standard of Review.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  Id.; see also, Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.  See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision.").  A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ

- 11 -

of Habeas Corpus, is now limited to the narrow class of claims which have been fully

exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2)   resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable

application" clauses of Section 2254(d)(1), present two separate grounds on which a

Federal Court may grant Habeas relief to claims adjudicated in the State Courts.  See,

Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrive[d] at a conclusion
> opposite to that reached by [the United States Supreme
> Court] on a question of law or if the state court decide[d] a
> case differently than [the Supreme Court] has on a set of
> materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifie[d] the correct governing
> legal principle from [the Supreme Court's] decisions but
> unreasonably applie[d] that principle to the facts of the
> prisoner's case.

Id. at 412-13; see also, Penry v. Johnson, 532 U.S. 782, 792-93 (2001).

- 12 -

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, Penry v. Johnson, supra at 792-93; Smulls v. Roper, --- F.3d ---, 2006 WL 3077746 at *3 (8th Cir., November 1, 2006); Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Underdahl v. Carlson, supra at 798; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in

cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations.  See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed).  Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See, Smulls v. Roper, supra at *9; Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).   Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); Smulls v. Roper, supra at *3; McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996) ("[W]e presume state court findings

of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

B.   Legal Analysis.  Since they involve somewhat differing considerations, we address the Petitioner's Grounds for Habeas relief in three separate categories.

1.   Grounds One and Four.  Although differently phrased, in Ground One, the Petitioner contends that his "[c]onviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure," "[in] [v]iolation of US Const. Amend. IV and XIV * * *" and, in Ground Four, he alleges that "[t]he facts of this case do not support the Inevitable Discovery Exception to the Exclusionary Rule," "depriv[ing] Petitioner of a "full and fair litigation of Fourth Amendment Claim." Both Grounds raise Fourth Amendment issues.  As the Respondent correctly argues, however, Fourth Amendment claims are not reviewable in a Federal Habeas Petition, because of the rule first enunciated in Stone v. Powell, 428 U.S. 465 (1976).  There, the sole question presented was "whether state prisoners who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule

- 15 -

with respect to seized evidence by the state courts at trial and on direct review may invoke their claim again on federal habeas corpus review." Id. at 489.  After fully considering the question, the Court concluded that, "where the State  has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.

While the Petitioner argues that the remand, which was ordered by the Minnesota Supreme Court, deprived him of a full and fair opportunity to litigate the Fourth Amendment claim, he offers no authority for that position, and repeats the same contention in Ground Three, which we will separately address hereinafter. Suffice it to say that, in Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995), our Court of Appeals considered the same contention the Petitioner advances, and concluded that the petitioner, there, had failed to demonstrate any defect in the procedures afforded him on the Fourth Amendment issue, "as the Minnesota Supreme Court affirmed the trial court's and the Minnesota Court of Appeals rulings on th[o]se issues."  Here, after two rounds of appeals, it cannot responsibly be said that the Petitioner was denied a full and fair opportunity to contest the Trial Court's, and the Minnesota Court of Appeals' rulings on his Fourth Amendment claims.

- 16 -

We are mindful that the Petitioner criticizes the Minnesota Supreme Court's Remand Order, by echoing the observation of a solo dissent to that Court's ruling. See, Licari II, supra at 259 (Meyer, J., dissenting)("I disagree with the majority's decision to remand to the district court to allow the state to develop a new record in support of a possible 'inevitable discovery' exception to the warrant requirement," "because our remand amounts to giving the state a post-hoc rationalization that is not supported by the existing record and that can never be legitimately developed on remand."). Notably, that dissent cites to no constitutional deprivation that would be caused by the remand, and none has been drawn to our attention by the Petitioner, or by our independent research.

More importantly, however, when presented with an opportunity to contest the taking of additional evidence on remand, the Petitioner registered no objection, either in the Trial Court, or on appeal. Instead, the Petitioner expressly conceded, on appeal, that, "[a]t the beginning of the [Remand] Hearing on August 29, 2003, the parties agreed that the hearing on remand was 'a continuation' of the [suppression] hearing held on August 31, 1999, and part of the record of the proceedings." Appellant's Brief and Appendix in Licari III, Exhibit 9 to Appendix to Respondent's Memorandum in Support of Motion to Dismiss Petition ("Appendix"), at p. 6 n. 1.

- 17 -

As a result, rather than to contest the taking of additional evidence, the Petitioner agreed to its incorporation in the earlier suppression Hearing -- a Hearing that occurred prior to the Petitioner's acceptance of a <u>Lothenbach</u> plea.   <u>Id.</u> at 2. Therefore, any objection to the conduct of the Remand Hearing was waived by the Petitioner, and not preserved for appeal.

On this Record, we find no want of a full and fair opportunity, on the part of the Petitioner, to litigate his Fourth Amendment contentions in the Minnesota Courts.  As our Court of Appeals has recently explained:

> A Fourth Amendment claim is not cognizable on federal habeas review unless the state fails to provide an "opportunity for full and fair litigation of [the] claim." Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  Thus we will review a Fourth Amendment claim raised in a habeas petition only if either "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system."  Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994)(en banc).

<u>Palmer v. Clarke</u>, 408 F.3d 423, 437 (8th Cir. 2005).

Here, the Petitioner's Fourth Amendment claim was reviewed and decided by the Minnesota Courts, and therefore, "we need not reexamine [those Courts'] decisions," <u>id.</u>, and the Petitioner is not entitled to Federal Habeas relief on Grounds One and

Four.  Accordingly, there is no merit to the claims in the Petitioner's Grounds One and Four.

   2. <u>Ground Two</u>.  In Ground Two, the Petitioner contends that his "[c]onviction was obtained by use of evidence obtained pursuant to an unlawful arrest."  Although the Respondent urges that the Petitioner has not fully exhausted this Ground for relief, the allegations of the Ground are intrinsic to his contention that, absent the evidence seized in the search of his storage unit, law enforcement had no probable cause for his arrest.  Plainly, the contention was soundly rejected, since the fact that his arrest, and subsequent conviction, were determined by the Minnesota Courts to have been supported by the evidence, including that secured in the search of his storage unit.  Equally plain is the fact that this Ground is also <u>Stone</u>-barred.

  "The Fourth Amendment includes the right to be free from arrest without probable cause."  <u>Lambert v. City of Dumas</u>, 187 F.3d 931, 935 (8th Cir. 1999), citing <u>Ripson v. Alles</u>, 21 F.3d 805, 807-08 (8th Cir. 1994); <u>Daniels v. Downing</u>, 2003 WL 252114 at *3 (D. Minn., January 30, 2003)("The Fourth Amendment guarantees the right to be free from arrest without probable cause.").  Since the Petitioner's Ground Two also raises a Fourth Amendment claim, that Ground is unreviewable in a Federal Habeas proceeding such as this one.  See, <u>Cardwell v. Taylor</u>, 461 U.S. 571 (1983)

(holding that Habeas Corpus relief could not be granted on the ground that custodial statements were obtained in violation of the Fourth Amendment, but relief would be available if the statements were involuntary, and therefore, obtained in violation of the Fifth Amendment).  Here, the Petitioner only contends that his arrest violated the Fourth Amendment, and therefore, Federal Habeas relief is unavailable on that claim.

     3.   <u>Ground Three</u>.  The far more interesting contention is that advanced by the Petitioner in Ground Three -- namely, "[t]he State of Minnesota violated the Lothenbach Plea by instructing the District Court to add facts to the record not agreed to by petitioner."  Notably, the Petitioner does not challenge the constitutionality of the <u>Lothenbach</u> proceeding, nor could he.  As the Minnesota Supreme Court recognized, in <u>Lothenbach</u>, the Supreme Court approved of a closely analogous plea approach, that was practiced by the State of New York.  See, <u>State v. Lothenbach</u>, 296 N.W.2d 854, 857 (Minn. 1980), citing <u>Lefkowitz v. Newsome</u>, 420 U.S. 283 (1975);[3] see also, <u>State v. Verschelde</u>, 595 N.W.2d 192, 195 (Minn. 1999).

---

    [3]In <u>Lefkowitz v. Newsome</u>, 420 U.S. 283 (1975), the Supreme Court held that a conditional guilty plea, under a New York statute which permitted such pleas, did not foreclose Federal Habeas review of the denial of a Suppression Motion.  However, one (1) year later, the Supreme Court decided <u>Stone v. Powell</u>, 428 U.S. 465 (1976), which precluded Federal Habeas review of a Fourth Amendment Suppression decision of a State Court, where the petitioner had a full and fair opportunity to address that

(continued...)

Nor does the Petitioner contest the knowing and voluntary nature of his agreement to a <u>Lothenbach</u> plea.  Indeed, we find no showing that the Petitioner objected to the evidence secured on remand and, as we have previously noted, any objection to that evidence was waived.

Nonetheless, construing Ground Three indulgently, we recognize that the Petitioner could be alleging a Sixth Amendment violation, in that the Trial Judge was rendering factual findings, on remand, and not a Jury.  Under Minnesota law, as guided by Supreme Court precedent, "[t]he Lothenbach procedure requires a waiver of the right to a jury trial on the elements of the offense," however, "[i]mplicit in that waiver * * * is not a waiver of the right of a jury to determine aggravating factors relating to sentencing."), <u>State v. Johnson</u>, 689 N.W.2d 247, 254 (Minn.App. 2004), rev. denied (Minn., January 20, 2005), adverting to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); see also, <u>State v. Amundson</u>, 712 N.W.2d 560, 566 (Minn.App. 2006),

---

[3](...continued)
claim in the State Courts.  In distinguishing <u>Newsome</u>, the Supreme Court noted that, there, the "Court focused on the issue whether a state defendant's plea of guilty waives federal habeas review where the state law does not foreclose review of the plea on direct appeal, and did not consider the substantive scope of the writ."  <u>Stone v. Powell</u>, supra at 480 n. 14, citing <u>Lefkowitz v. Newsome</u>, supra at 287 n. 4.  As a consequence, <u>Stone</u> controls our analysis of the Petitioner's Fourth Amendment claims, and precludes our Federal Habeas review of those claims.

rev. granted (Minn., June 28, 2006)("But we note that Blakely applies to Lothenbach trials and that a Lothenbach stipulation does not waive the right to a jury trial on aggravating factors that might be used for sentencing.").  Here, the Remand Hearing was not conducted to adduce evidence as to the elements of the crime of which the Petitioner was charged, nor was it employed to address sentencing factors, as the Petitioner, and the State, had agreed upon the length of the Petitioner's sentence if a conviction were returned by the Trial Court.

The sole purpose of the Remand Hearing was to adduce evidence as to the admissibility of the evidence that had been seized from the Petitioner's storage unit. As the Petitioner conceded, in agreeing to include the evidence secured in the Remand Hearing as a continuation of the original Suppression Hearing, the evidence adduced was for the sole consideration of the Courts, as the admissibility of evidence involves a legal, and not a Jury question.  See, e.g., State v. Othoudt, 482 N.W.2d 218, 221 (Minn. 1992)("Normally, this court will only reverse a pre-trial decision of the trial court suppressing evidence if the State demonstrates 'clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial."); State v. Webber, 262 N.W.2d 157, 159 (Minn. 1977)("[W]hen reviewing a pre-trial order suppressing evidence where the

facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed."), citing <u>State v. Storvick</u>, 428 N.W.2d 55, 58 n. 1 (Minn. 1988); <u>City of St. Louis Park v. Berg</u>, 433 N.W.2d 87, 89 (Minn. 1988) ("The legality of the arrest, whether based on facts not in dispute or on facts as found, is a legal conclusion or determination, which we review like any question of law."), citing <u>Berge v. Comm'r of Public Safety</u>, 374 N.W.2d 730, 732 (Minn. 1985).

Indeed, in reciting the applicable "Standard of Review" to the Minnesota Court of Appeals in <u>Licari III</u>, the Petitioner correctly recognized that the Trial Court's rulings on issues of admissibility involves questions of law:

> On appeal, the district court's findings of fact will be reversed if they are clearly erroneous. State v. Dickerson, 481 N.W.2d 840, 843 (Minn. 1992) aff'd 508 U.S. 366 (1993). When reviewing trial orders on motions to suppress evidence, an appellate court may independently review the facts and determine, as a matter of law, whether the district court erred in not suppressing evidence. See State v. Harris, 590 N.W.2d 90, 98 (Minn. 1999). On undisputed facts, the district court's omnibus ruling on the suppression of evidence is a question of law, and this Court may determine, as a matter of law, whether the evidence should be suppressed. State v. Othoudt, 482 N.W.2d 218, 221 (Minn. 1992).

<u>Appendix</u>, <u>Exhibit 9</u>, at p. 15.

Tellingly, the Petitioner did not argue then, to the Minnesota Courts, that the admissibility of the evidence, which concerned the search of his storage unit, was a factual question committed to a determination by the Jury -- for it was not. Although the Petitioner disagrees with the result reached by the Trial Court on remand, as well as with the ruling of the Minnesota Court of Appeals on review, the fact remains that the Petitioner obtained as full and fair a consideration of that issue as the Constitution requires.[4]  Accordingly, the Petitioner's Ground Three is without merit.

Notwithstanding our conclusion, that the claims in Ground Three are meritless, we do not recommend dismissal on that basis for, as the Respondent has correctly observed, the Petitioner failed to exhaust his State remedies on Ground Three.  His filings to the Minnesota Courts, following remand, are devoid of the slightest intimation that the Petitioner was contesting the conduct of the Remand Hearing on

---

[4]As but one example, in his brief to the Minnesota Court of Appeals in Licari III, the Petitioner cited several of the Trial Court's factual findings on remand, and then posted a footnote that he did not challenge those findings -- admittedly, the findings that supported his defenses.  See, Appendix, Exhibit 9, at pp. 12-13, and n. 8. Obviously, had the Petitioner taken exception to the fairness, or the fullness of the Remand Hearing, he would have registered his objection, and would not have embraced the correctness of the Trial Court's findings simply because they bolstered his defenses.  As is so often the case, the Petitioner cannot have it both ways.

- 24 -

grounds related to his <u>Lothenbach</u> plea.  As a consequence, the Petitioner has abjectly

failed to exhaust his State Court remedies on the claims contained in his Count Three.

Unfortunately for the Petitioner's attempt to now adjudicate his Count Three,

it is well-settled that a Federal Court will not entertain a Petition for Habeas relief on

behalf of a State prisoner, unless the prisoner has first exhausted all available State

Court remedies. See, <u>Title 28 U.S.C. §2254(b)</u>; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838,

842 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); see also, <u>Armstrong v. State of</u>

<u>Iowa</u>, 418 F.3d 924, 925 (8th Cir. 2005)("Federal habeas relief is available to a

petitioner after he 'has exhausted the remedies available in the courts of the State.'"),

cert. denied, --- U.S. ---, 126 S.Ct. 1351 (2006), quoting <u>Title 28 U.S.C. §2254(b)</u>

<u>(1)(A)</u>.  The exhaustion of the State remedies requirement is based on principles of

comity and federalism, since its purpose is to ensure that State Courts are given the

first opportunity to correct any alleged constitutional errors raised by State prisoners.

See, <u>O'Sullivan v. Boerckel</u>, supra at 844; <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66

(1995); <u>Rose v. Lundy</u>, supra at 518-19; <u>Curtiss v. Mount Pleasant Correctional</u>

<u>Facility</u>, 338 F.3d 851, 855 (8th Cir. 2003)("The exhaustion requirement serves

AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts

'the first opportunity to review [the] claim,' and to 'correct' and 'constitutional

violation in the first instance.'"), cert. denied, 540 U.S. 1060 (2003), quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 220 (2002).

Therefore, when presented with an unexhausted claim, a Federal Court must either dismiss the Petition -- even when it contains exhausted claims -- or it can stay the Habeas proceeding until exhaustion in the State Courts has been accomplished. See, <u>Armstrong v. State of Iowa</u>, supra at 925 ("When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in Rhines v. Weber, [544 U.S. 269, 276], 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005)."). In <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), the Supreme Court recently acknowledged the authority of a Federal Court, in extraordinary cases, to issue, <u>sua sponte</u>, a stay of a State prisoner's Habeas Petition in order to allow the prisoner to exhaust his State Court remedies. However, the Court noted that such authority was necessarily limited by the AEDPA.

As here pertinent, the Court concluded, in <u>Rhines</u>, that "stay and abeyance should be available only in limited circumstances." <u>Rhines v. Weber</u>, supra at 277. The Court went on to state as follows:

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay **when his unexhausted claims are plainly meritless**. Cf. 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Id. [emphasis added].

Here, we have addressed the merits of the Petitioner's claims, as he has alleged them in Ground Three, and, finding that they are without merit, we do not recommend that the Petitioner be granted a stay and abeyance, so as to exhaust those claims in the Minnesota Courts.[5] Rather, we are obligated to recommend that the dismissal be with prejudice, as his claims, as contained in Ground Three, have no merit. See, Title 28 U.S.C. §2254(b) (2). Accordingly, the Petitioner's application for Habeas relief should be dismissed with prejudice.

NOW, THEREFORE, It is –

---

[5]Moreover, even though the Petitioner was properly placed on notice, that the Respondent was seeking the dismissal of his claims because they included unexhausted questions, the Petitioner has neither contested that characterization, nor shown the slightest cause for not having pursued them in the State Courts.

- 27 -

RECOMMENDED:

1.      That the claims in the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied in all respects.

2.      That the Petition be dismissed with prejudice.

3.      That Judgment be entered accordingly.


Dated:  November 27, 2006                    s/Raymond L. Erickson
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 11, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

- 28 -

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 11, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.